Good morning. My name is Carla Kraus. I'm representing Ms. Aracela Hernandez-Ramirez. She is here in the courtroom today with her husband and her mother. This case occurred based on an arrest at the San Ysidro Court of Entry, spring break, April 2000. Ms. Hernandez was in a car driving at the time of her arrest. This is a factual case. There is not a law, a lot of law, to support her position, but I believe that the law would demonstrate, based on persuasive authority in the Sixth Circuit, the case Tapasu, that mere driving of a car does not constitute ailing smuggling. I agree with that completely. The evidence here was that she, Haskell testified that your client testified that she knew her cousin was going to make a false claim to U.S. citizenship. I believe that at the time of the interview, which is approximately 18 hours later, my client testified that, yes, she knew her cousin was undocumented. They've known each other for 20 years. They were both approximately 22 years of age. And the fact is that the period before she went up to the border, that was not what was in her mind. Well, I guess, you know, clearly this was exceedingly bad judgment on the part of your client, who probably had a very good chance of becoming, being able to stay here. She's got children. You know, she's got every sympathetic factor that one could look at. But, you know, how do we get around the things that she said regarding her knowledge, and if we apply the standards of review that were required to do it? That's what you really need to address. I mean, the bottom line, sadly, your client made a very bad judgment in terms of to go down to whatever, the discotheque and drink or do whatever and come back and, you know, do something like this. But, you know, you've got all the sympathy going for you. But, unfortunately, there's a lot of law or a lot, you know, how, you know. Well, let's talk about. I mean, we have to approach it that way. I mean, don't, you know, don't think that we're not aware of that. But by the same token, you know, we're judges, too. Let's talk about the knowledge. And that night, she didn't even want to go to Tijuana. She was drinking shots of tequila and beer. At her house, she was persuaded to go to Tijuana because her car was large enough to fit all the girls into the car. She didn't even drive to Tijuana. Okay. So that's bad judgment. On the way there, she was putting on her makeup. They went to the discotheque. She had more to drink. At some point, the girls wanted to go home. The bad, regrettable thing is that she grabbed the keys. This was a group of girls that were sharing responsibilities of going to Tijuana and coming back. If another person had grabbed the keys, she would be fine today. She was the one that decided to drive home. On the way to the border, she was thinking about driving carefully because she was drinking. She was also thinking about getting home to her family and her son. She was not thinking about, how am I going to cross an illegal alien to the United States? What should she say? What will happen? Her state of mind at that point, before she crossed that border, was not focused on crossing an alien. Okay. Well, it's all right. But how she was going to get across successfully isn't really what we have to look at. It's what she knew and what her actions were, right? And what is the evidence on that? Her action was she was sharing, like the petitioner in Topeku, driving responsibilities. She was drinking. She was partying with her friends. It's a very common thing in San Diego. She drove her undocumented cousin into the United States, then initially lied to the border inspector telling him her cousin had a green card, and later admitted that she knew of her cousin's undocumented status prior to crossing the border, right? Initially, she told the officer that her cousin had documents at home, which was true. Her cousin's father was petitioning for her to immigrate to the United States. Later, she revealed that her cousin did not have documents to cross the border. It depends whether or not an officer will allow someone to enter the United States when a petition is pending, but in this case, because the cousin stated she was a U.S. citizen, she was subject to expedited removal. This is not what Congress intended to be alien smuggling. This was a group of girls that left and within several hours returned to the United States. They left together and came back together. Her cousin regularly crossed the border and made it across. It was not what Congress intended to have for people who are doing foolish things, like the language in Carvajal, foolish, drunk, and lark. Well, I guess is her cousin not responsible for illegal entering if she regularly did it and was successful? Is that what you're saying? Adriana, her cousin, has to take the responsibility for this. And what about the other girls in the car? Adriana was sitting in the car. Did the other girls lie to him? I'm sorry? Did the other girls lie? There was one other passenger in the car who did claim to be a U.S. citizen. The respondent had known her for approximately 15 days. And she's out. All right. She was excluded. Is that correct? She was subject to expedited removal and I believe removed from the United States. Now, the ones who are here in the United States, did either of them lie? I don't believe so, Your Honor. There was no evidence in the record of that. So there are two people who lied coming in of the four people we're left with. And those two people, one of them has already been excluded, according to you. And the other one is this petitioner. Am I correct? There were five girls in the car. The petitioner was driving. There were two girls that had documents and two girls that did not have documents. The two girls that had documents were allowed to enter the United States. They didn't lie? I'm not sure of that, Your Honor. They weren't testifying and we had no I-213s. You mean to say your client never told you? I'm sorry? You mean to say your client never told you whether or not they had been charged? The two girls that were allowed into the United States were not charged. Okay. The two that were removed obviously didn't have documents. They could not enter the United States. And the one that is here lied? Well, initially she stated her cousin had documents at home. Then, under examination by Officer Haskell under penalty of perjury, she informed the officer that her cousin did not have documents. She told the truth. I'm worried about what kind of rule we would promulgate if you win. I think I hear you saying that it would not be illegal for someone to knowingly drive an illegal alien to the border, knowing that that illegal alien is going to try to make a false claim of U.S. citizenship, that that's not aiding and abetting. I think that this wouldn't open a lot of cases because there usually is an affirmative act. The affirmative act is saying get in the car or drive into the border. She didn't tell her to get in the car. In fact, her cousin could have done that. Well, you know what I mean. Driving her to the border, putting her foot on the gas and driving. Well, whether that's the affirmative act, but it goes to the certain factions. Transporting her to the border, knowing that the passenger in her car is going to make a false claim of citizenship. But at the time that she did it, she did not know that. She wasn't thinking about that. It was a snowball effect. It rolled and she got caught. They knew they were heading back to the United States. I mean, I don't understand the distinction you're making. They know they're driving to the border and they know and she knows that her cousin is in the car and she knows that they're going to be at the border inspection station in a few minutes and that she's going to falsely claim to be a U.S. citizen. Well, I think each case you have to look at the circumstances of the cases and what a reasonable person in such circumstances might do. And in this case, based on the facts presented, she was drinking. She was coerced to go to Mexico. She was depressed. She didn't intend. She was depressed? Well, she didn't intend to get caught. Okay. That's clear. It's sort of like when you talk to your children and you say, are you sorry? Are you sorry you got caught? She didn't intend to get caught. But we have to also look at, I mean, did, you know, was the driving of the volitional act? Did she know that this person didn't have the documents? Did she still go ahead and then did she lie? I think it's an incredibly tragic situation and it was incredibly bad judgment, but Judge Silverman's raising the point of, you know, does then I guess essentially forgiving your client's bad judgment, does that then say that people can do what she did, which is in violation of the law and then anyone else can do the same? I think in another situation where she had met her in Tijuana and talked about it and brought it up. Well, yeah, it's other facts, but the question is, do your facts support a violation? I don't believe so. I believe that at the time when she got in that car, it could have been any person driving the car. She wasn't thinking about it. There was no intent. There was no encouragement. She wasn't nervous at the border. She wasn't shaking. She was not averting her eyes. There was no evidence of this. She wanted to drive home. And San Diego is 30 minutes away from Tijuana, 15 to 30 minutes. That's what was in her mind at the time, not the knowledge or intent to cross her cousin. That didn't enter her mind. It's a very sad situation, and it's the same sad situation she wanted to drive home, and if she was drunk and if she had killed someone, then those are consequences as well. I mean, it's a sad situation, but your client does have to take some responsibility here in terms of her own very poor judgment. Does the responsibility result in permanent removal from the United States to Mexico and separation from her family for one foolish lark, such as they state in Carbohol, where people do things when they're drinking they normally wouldn't do and their minds are altered? They make stupid decisions. This was stupid, but does it result in her removal from this country for the rest of her life? Thank you very much. Jennifer Lightbody. May it please the Court, my name is Jennifer Lightbody and I represent the Respondent. Substantial evidence supports the immigration judge's determination that Petitioner Hernandez knowingly assisted, aided and abetted the attempted entry of two aliens into the United States in violation of the law. The record shows she knew that both of the aliens had no legal documents. In addition, Officer Haskell testified that when he interviewed her, and this is at page 155 of the record, she knew it was against the law to assist in an unlawful entry. This is supported by substantial evidence in the record. In her declaration, she claimed that she knew both or that she knew at least that her cousin wasn't, couldn't lawfully enter, page 206 of the record, in her testimony at page 107, and in EI 213. She was also the owner and operator of the vehicle, and she hasn't disputed that, and she transported the aliens, or attempted to, into the United States, page 102 of the record and page 218. Even if this Court were not persuaded that the fact that she was the driver and owner of the vehicle, in addition to that, she did go up to the immigration officer and say, oh, my cousin left her papers at home. In fact, she told the officer that she had an I-551, an LPR card. Not that she was necessarily just trying to adjust her status, but that she had a green card at home. So if this Court requires an affirmative act, not only was she driving, not only was she driving, but she also went up to the immigration officer and said, my cousin left her papers at home. So this is different from the Sixth Circuit case, where the Sixth Circuit said it requires more than just presenting the alien to the border officials. Well, she did more than that. She actually told an immigration officer that my cousin has documents at home. And the Petitioner in this case has not shown that the record evidence compels a contrary conclusion. Her client was found not credible. That credibility finding has not been challenged before the Board. It's not been challenged here. And it's supported by substantial evidence. In her brief to the Court, she said she cites several different reasons why the Court should reverse. One, she says that by driving back and forth on the same day, that can't show that it was alien smuggling. Well, immigration officer Boutry at page 124 of the record said in his experience it's normal for an alien smuggler to take the smuggly to Mexico and bring the smuggly back. In addition, she says, well, I was too intoxicated. I didn't know what I was doing. Well, the immigration judge found that that lacked credibility. The alien was not credible when she said she was too drunk. And in addition, we've cited in a 28J letter that knowingly is a general intent crime, and intoxication is not a defense to that, and it shouldn't be here. In addition, the immigration judge found that the two officers, one who observed her for four to five hours and the other who interviewed her, said she wasn't intoxicated. Both of those officers, rather, said she wasn't intoxicated. At page 116, 130, 164, and 169 of the record, the immigration judge found that those officers were credible. She also says due to her age and vulnerability, she was unable to form the requisite intent. However, the immigration judge, looking at the evidence in particular, the doctor's report, said that the doctor didn't find that Hernandez lacked the ability to form intent. And he was not persuaded that a person who is easily manipulated lacks the ability to form a judgment of the appropriateness of her behavior. None of the issues pointed to by the petitioner compel a contrary conclusion. She's asking this Court to reweigh the evidence and to issue a decision contrary to the immigration judge. However, she hasn't shown that the record evidence compels a contrary conclusion, and for that reason, the Court should deny the petition and dismiss the case. She also wants, appears to want the Court to redefine, again, aiding, assisting, and abetting. But here the agency said she was the driver of the vehicle, she owned the vehicle, and that constitutes aiding and abetting. And that decision is entitled to deference under Chevron. It's a reasonable interpretation of the statute. And again, in addition to that, she told the immigration officer, my cousin has papers at home. Again, going back to the Sixth Circuit case, the Court should not adopt it because it's not binding precedent. It was wrongly decided and it is factually distinguishable. The Sixth Circuit found that in that case the petitioner could not adopt it. I'm sorry. I don't mean to repeat that. It's factually distinguishable here because, again, she knew that both of the aliens in the car could not lawfully enter. And there was some suggestion that she didn't know the friend was not legal. Well, the immigration judge at page 32. Kennedy. Does it matter? I'm sorry? Does it matter if it's one or two? It really doesn't, Your Honor. Okay. She did argue, however, that somehow that was incorrect and may have influenced the board to affirm without opinion. And we would submit to the Court that the immigration judge handled that. At page 32, note one of the record finding that that was not credible. Let me ask you this. I've noticed in other cases sometimes the agency likes to have these kind of tough equity cases go to mediation. Would that be something the agency might be interested in pursuing here? No, Your Honor. We're not interested in pursuing that.  And that is that she's barred from returning to the United States. And while that may seem severe, the fact of the matter remains that she knowingly aided and assisted two other aliens to unlawfully enter the United States. And there is a consequence for that. And as unfortunate and as sympathetic as this case may be, the fact remains that she violated the law. She knew what she was doing. Her defense of intoxication was found not credible. Again, as we pointed out in our 28J letter, that that should not negate the knowing general intent crime. It shouldn't negate the knowing in this particular statute as well. And, again, as we pointed out in the more recent case by the Ninth Circuit, the Hernandez-Guterrano case, again, Judge Reinhardt had indicated there's no need to demonstrate that she had actual transportation. Here, there was actual transportation. And unlike in the Sixth Circuit case where the parties were sharing expenses, sharing the van, and they said, well, there was no more assistance from one versus the other, here we have the assistance because it's her car and she is driving. There are no shared expenses here. This is the petitioner's car. And, again, there were five people in the car at the time. Two of them, I believe, were admitted to the United States, and two of them were returned. And both of them ---- Kennedy, you didn't answer my question. I asked your opponent. The question I asked your opponent was did the two who were admitted lie? I don't know that there was ---- I don't think there was any evidence in the record that the two who were admitted were lying. Okay, fine. That's ---- But we do know that both of the individuals who she attempted to smuggle into the United States did admit that they didn't have legal documents. And also there was evidence in the record that she knew beforehand that her cousin was going to tell the immigration officials that she was a U.S. citizen when she approached the border. And unless there are any other questions ---- I don't think so. We would ask that the Court deny the petition for review and dismiss this case. Thank you. Ms. Gross, you've really used up your time. We'll give you a minute in rebuttal, but please keep it to a minute if you would. I just want to point out, FAM 22 CFR, that's the Foreign Affairs Manual, does state the smuggler must act with intention of encouraging or assisting the alien to achieve the legal entry. Here again, her cousin has crossed repeatedly without problems. This wasn't an issue at the time. This wasn't alien smuggling. In terms of her lying to the officer, she told the officer that her cousin did not have ---- he had documents at home. She did not see I-551. I cross-examined Officer Boutry on that issue, and he backed up, because that is a technical term that not a lot of people know about. She told the officer she had documents at home, which was the truth. She was straightforward afterward. And this just doesn't amount to the facts of this case. These unique facts do not amount to alien smuggling. Thank you, Ms. Gross. I'm glad the case has started. It is submitted. The last two cases ----
judges: Silverman, Callahan, Duffy